UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUANNA MITCHELL,<br><br>Defendant | Criminal No. 25cr10380<br><br>Violations:<br><br>Count One: Theft of Mail Matter by Officer or Employee<br>(18 U.S.C. § 1709)<br><br>Count Two: Wire Fraud<br>(18 U.S.C. § 1343)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461) |

INFORMATION

1. At all times relevant to this Information, JUANNA MITCHELL ("MITCHELL") was a resident of Roxbury, Massachusetts.

2. From around October 27, 2018, to December 5, 2024, MITCHELL worked for the United States Postal Service ("USPS"). From approximately October 27, 2018, to September 11, 2020, MITCHELL worked as a postal support employee retail associate at the Roxbury Station Post Office, and from approximately September 12, 2020, to December 5, 2024, MITCHELL worked as a mail processing clerk at the Fenway Carrier Annex Post Office.

3. As a mail processing clerk, MITCHELL's duties included processing, sorting, and distributing mail.

4. Since December 2020, MITCHELL has received direct deposits of her USPS paycheck into her TD Bank, N.A. account ending in 4500 ("TD Account").

5. TD Bank, N.A. is a financial institution based out of Cherry Hill Township, New Jersey.

6. The United States Small Business Administration ("SBA") is an agency of the executive branch of the United States government. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enables and provides for loans, guaranteed by the government, through banks, credit unions, and other lenders.

## Theft of Mail Matter by Employee

7. On or about October 6, 2024, MITCHELL stole 16 pieces of mail from the Fenway Carrier Annex Post Office, which was entrusted to her as a USPS employee, all of which contained checks not addressed to MITCHELL.

## The Economic Injury Disaster Loan Scheme to Defraud

*A.     The Economic Injury Disaster Loan Program*

8. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering the economic effects of the COVID-19 pandemic. Among other things, the CARES Act expanded the SBA's Economic Injury Disaster Loan ("EIDL") program to provide loans of up to $2 million to small businesses that suffered "substantial economic injury" from COVID-19. The EIDL program required recipients to use EIDL funds only on certain business expenses, including payments of fixed business debts and payroll.

2

9. EIDL funds were issued directly from the United States Treasury. Applicants applied through the SBA via an online portal. The EIDL application process required applicants to provide information concerning the affected business, including the number of employees, gross revenues, and costs of goods sold in the 12 months prior to January 31, 2020, as well as information about the business owner. Applicants electronically certified that the information provided was accurate.

10. The SBA relied on the truthfulness and accuracy of the information provided by the applicant to determine how much money the small business was eligible to receive in the form of EIDL funds. Additionally, by checking a box in the online EIDL application, an applicant could request and receive $1,000 per employee, up to $10,000, in an EIDL Cash Advance Grant. The applicant was not required to repay an EIDL Cash Advance Grant, even if (i) the SBA ultimately denied the EIDL application or (ii) the applicant ultimately declined the loan.

B. *The Falsified EIDL Application*

11. On or about July 8, 2020, MITCHELL submitted a fraudulent EIDL application for her alleged lawn and garden business.

12. In the application, under "Where to Send Funds," MITCHELL listed the account number for the TD Account where MITCHELL received her USPS paychecks.

13. MITCHELL further checked the box requesting "to be considered for an advance of up to $10,000."

14. MITCHELL certified, under penalty of perjury, that all the information on the application was true and correct.

15. MITCHELL's application, however, contained materially false information, including that:

    a. The date of establishment for the business was June 23, 2018;

    b. The business had 10 employees as of January 31, 2020;

    c. The gross revenue for the 12 months prior to the date of disaster (January 31, 2020) was $49,470; and

    d. The cost of goods sold for the 12 months prior to the date of the disaster (January 31, 2020) was $10,980.

16. MITCHELL knew that her application contained materially false information because, among other things:

    a. There was no such lawn and garden business;

    b. The only employment that MITCHELL claimed on her federal income tax return form 1040 from 2018, the year MITCHELL supposedly established her business, through 2020 was her USPS employment; and

    c. MITCHELL did not provide any other information in her tax returns consistent with owning a business, including failing to file a Schedule C or list any expenses in her returns.

17. Although the SBA ultimately rejected the loan application, the SBA did grant MITCHELL an EIDL advance for $10,000.

    C.    *MITCHELL used the EIDL Advance for Personal Expenses*

18. MITCHELL used the $10,000 EIDL advance that she received to pay for personal, family, and household expenses.

19. These expenses included a $2,000 cash withdrawal, Uber/Lyft rides, ATM withdrawals, Comcast bills, a nail salon trip, a $602.44 shopping spree at Target, and Nike purchases.

20. MITCHELL received the EIDL advance on July 14, 2020, into the TD Account.

21. By October 14, 2020, or approximately three months after MITCHELL obtained the EIDL advance, the account balance in the TD Account was $51.02.

COUNT ONE
Theft of Mail Matter by Officer or Employee
(18 U.S.C. § 1709)

The United States Attorney charges:

22. The United States Attorney re-alleges and incorporates by reference paragraphs 1-3 and 7 of this Indictment.

23. On or about October 6, 2024, in the District of Massachusetts, the defendant,

JUANNA MITCHELL,

being a Postal Service employee, did knowingly embezzle any letter, postal card, package, bag, mail, and any article and thing contained therein intended to be conveyed through the mail, namely, 16 pieces of mail which each contained a check.

All in violation of Title 18, United States Code, Section 1709.

COUNT TWO
Wire Fraud
(18 U.S.C. § 1343)

The United States Attorney further charges:

24. The United States Attorney re-alleges and incorporates by reference paragraphs 1-6 and 8-21 of this Indictment.

25. On or about July 8, 2020, in the District of Massachusetts, and elsewhere, the defendant,

JUANNA MITCHELL,

having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, to wit, a fraudulent Economic Injury Disaster Loan application that contained materially false information for the purpose of executing the scheme to defraud.

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

26. Upon conviction the offense in violation of Title 18, United States Code, Section 1343, set forth in Count Two, the defendant,

JUANNA MITCHELL,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following assets:

   a. $10,000, to be entered in the form of a forfeiture money judgment;

27. If any of the property described in Paragraph 26, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 26 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

                                          LEAH B. FOLEY
                                          United States Attorney

                        By:   /s/ Lucy Sun
                                          LUCY SUN
                                          Assistant U.S. Attorney

Date: September 22, 2025